COURT OF APPEALS
EIGHTH DISTRICT OF TEXAS
EL PASO, TEXAS

|  | § |  |
|---|---|---|
| JOSE DELGADO, | | No. 08-07-00030-CR |
| | § | |
| Appellant, | | Appeal from |
| | § | |
| v. | | 384th District Court |
| | § | |
| THE STATE OF TEXAS, | | of El Paso County, Texas |
| | § | |
| Appellee. | | (TC # 20060D04403) |
| | § | |

**O P I N I O N**

Jose Delgado appeals his conviction of possession of a usable quantity of marijuana. In his two issues for review, he complains that the evidence is legally and factually insufficient to establish affirmative links connecting him to the contraband. For the reasons that follow, we affirm.

**FACTUAL AND PROCEDURAL BACKGROUND**

On September 5, 2006, El Paso patrol officer Martin Moncada was searching a public parking lot for narcotics with the help of his dog, Reno. Reno, who was trained to detect and alert to odors of cocaine, marijuana, heroin, and methamphetamines, alerted Moncada to a gold 1987 Pontiac Fierro. After searching the remainder of the parking lot with no alerts to any other vehicles, Moncada and Reno returned to the patrol car and parked approximately fifty yards away from the Fierro.

Moncada learned from a "lane check" with U.S. Customs that the Fierro had crossed from Juarez into El Paso earlier that day. At that point, he saw Appellant approach the car. Appellant opened the passenger-side door, which appeared to be unlocked, and reached into the vehicle. He then walked to the driver-side door and used keys to enter the vehicle and start the engine. As

Appellant began to back out of his parking space, Moncada drove up behind him. He approached Appellant, identified himself, and explained that Reno had alerted to the presence of narcotics emanating from the vehicle. Appellant became extremely nervous; his hands shook as he gave Moncada his identification card, and he began to stutter as he talked. Appellant told Moncada that the vehicle belonged to someone else and that he was taking it back to Juarez for the owner. Moncada learned that the vehicle's license plates were registered to a 1993 Mercury, and he knew Appellant was not the registered owner of the car.

After obtaining Appellant's consent, Moncada and Reno searched the interior and exterior of the vehicle. Reno alerted to the back of the car again. Moncada checked that area and found a hidden compartment. Inside, Moncada found bundles of marijuana weighing approximately 100 pounds. Frank Gutierrez, an El Paso detective assigned to the "stash house" unit, estimated the street value of the drugs to be $134,000.

At trial, Moncada identified photographs of the 1987 Pontiac Fierro and the hidden engine compartment in which he found the marijuana. He also identified photographs showing a spiral notebook in the passenger seat. Based on his experience and training, Moncada believed that the notebook was a record of narcotics transactions. Gutierrez recognized the notebook as a "drug ledger" with information consistent with narcotics transactions.

The jury found Appellant guilty of possession of a usable quantity of marijuana in an amount over fifty pounds but less than 2,000 pounds. He was sentenced to eight years' community supervision, which included 300 hours of community service, a drug treatment program, and a $1,000 fine.

## SUFFICIENCY OF THE EVIDENCE

In two related issues for review, Appellant challenges the legal and factual sufficiency of the

evidence to sustain his conviction, complaining that the State did not prove beyond a reasonable doubt that he intentionally and knowingly possessed the marijuana.

## Standards of Review

In reviewing the legal sufficiency of evidence, we consider all of the evidence in the light most favorable to the verdict and determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 318-19, 99 S.Ct. 2781, 2788-89, 61 L.Ed.2d 560 (1979). We look at "events occurring before, during and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex.Crim.App. 2007) *quoting Cordova v. State*, 698 S.W.2d 107, 111 (Tex.Crim.App. 1985). We must account for "the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." *Hooper*, 214 S.W.3d at 13 *quoting Jackson*, 443 U.S. at 318-19, 99 S.Ct. at 2781.

As an intermediate appellate court, we are also constitutionally empowered to review the factual sufficiency of the evidence used to establish the elements of an offense. *Johnson v. State*, 23 S.W.3d 1, 6 (Tex.Crim.App. 2000) *citing Clewis v. State*, 922 S.W.2d 126, 129-30 (Tex.Crim.App. 1996). In a factual sufficiency review, all evidence is viewed in a neutral light. *Clewis*, 922 S.W.2d at 129. Evidence may be factually insufficient if it is so weak that it would clearly be wrong and manifestly unjust for the verdict to stand, or if the adverse finding is against the great weight and preponderance of the available evidence. *Johnson*, 23 S.W.3d at 11. We must determine whether a neutral review of all the evidence demonstrates that the proof of guilt is so obviously weak as to undermine confidence in the jury's determination, or proof of guilt, although ample if taken alone, is greatly outweighed by contrary proof. *Id.*

## Elements of the Offense

To prove possession of marijuana, the State must necessarily prove that the accused exercised care, control, and management over the marijuana, and that he knew he was in possession of the contraband. *Martin v. State*, 753 S.W.2d 384, 386 (Tex.Crim.App. 1988). Possession involves more than simply being where the action is; it requires exercise of dominion and control over the thing allegedly possessed. *McGoldrick v. State*, 682 S.W.2d 573, 578 (Tex.Crim.App. 1985). Evidence must affirmatively link the accused to the contraband by evidence indicating knowledge and control. *Menchaca v. State*, 901 S.W.2d 640, 651 (Tex.App--El Paso 1995, pet. ref'd), *citing Waldon v. State*, 579 S.W.2d 499, 501 (Tex.Crim.App. 1979). The burden of establishing affirmative links rests upon the State. *Menchaca,* 901 S.W.2d at 651, *citing Damron v. State*, 570 S.W.2d 933, 935 (Tex.Crim.App. 1978). Proof of knowledge is an inference drawn by the jury from all circumstances. *Dillon v. State*, 574 S.W.2d 92, 94 (Tex.Crim.App. 1978). Knowledge may arise from the conduct of and remarks by the accused or from circumstances surrounding the acts engaged in by the accused. *Sharpe v. State*, 881 S.W.2d 487 (Tex.App.--El Paso 1994, no pet.).

An affirmative link, which may be shown by either direct or circumstantial evidence, "must establish, to the requisite level of confidence, that the accused's connection with the drug was more than just fortuitous." *Brown v. State*, 911 S.W.2d 744, 747 (Tex.Crim.App. 1995). Factors that may affirmatively link the accused to contraband include whether: (1) the contraband was in plain view or recovered from an enclosed place; (2) the accused was the owner of the premises or the place where the contraband was found; (3) the accused was found with a large amount of cash; (4) the contraband was conveniently accessible to the accused; (5) the contraband was found in close proximity to the accused; (6) a strong residual odor of the contraband was present; (7) the accused possessed other contraband when arrested; (8) paraphernalia to use the contraband was in view, or

found on the accused; (9) the physical condition of the accused indicated recent consumption of the contraband in question; (10) conduct by the accused indicated a consciousness of guilt; (11) the accused attempted to flee; (12) the accused made furtive gestures; (13) the accused had a special connection to the contraband; (14) the occupants of the premises gave conflicting statements about relevant matters; (15) the accused made incriminating statements connecting himself to the contraband; (16) the quantity of the contraband; and (17) the accused was observed in a suspicious area under suspicious circumstances. *Lassaint v. State*, 79 S.W.3d 736, 740-41 (Tex.App.--Corpus Christi 2002, no pet.). Any list of affirmative links is non-exclusive. *Castellano v. State*, 810 S.W.2d 800, 805 (Tex.App.--Austin 1991, no pet.). The logical force the factors play in establishing the elements of the offense is more important than the number of factors involved. *See Jones v. State*, 963 S.W.2d 826, 830 (Tex.App.--Texarkana 1998, pet. ref'd).

If evidence suggests that the accused has dominion or control over the vehicle in which the contraband is concealed, the accused may be in possession of the contraband. *Castellano*, 810 S.W.2d at 806. (finding that defendant exercised control over a car and possession of its contraband as a passenger when he instructed the driver to continue on the freeway and not exit). Knowledge of the presence of contraband may be inferred from control over the vehicle in which the contraband is concealed, particularly when the amount of contraband is large enough to indicate that the accused knew of its presence. *Castellano*, 810 S.W.2d at 806. When contraband is found in hidden compartments in a vehicle, the court should not rely solely upon control of the vehicle to show knowledge. *Id.* Additional factors indicating knowledge, such as circumstances indicating a consciousness of guilt, must be examined. *Id.*

### Analysis of the Affirmative Links

The facts here closely parallel *Menchaca*. There, customs inspectors found packages of

marijuana totaling approximately fifty pounds hidden throughout the defendant's station wagon. *Menchaca*, 901 S.W.2d at 644. The initial inspector found a small cylindrical object wrapped in duct tape underneath the front fender and similar objects were found with the help of a trained canine. *Id.* A letter indicating a plan to meet at a location to discuss a "matter" was found in the vehicle. Menchaca had difficulty opening his trunk when asked because his hands were shaking. *Menchaca*, 901 S.W.2d at 652. Although Menchaca's conviction could not stand entirely on his control of the station wagon, other factors affirmatively linked him to the marijuana. The jury could have rationally inferred that the value of the contraband indicated knowledge, that this knowledge was the cause of Menchaca's nervousness, and that the specifics of the letter indicated a drug deal. *Id.*

Similarly, Appellant exercised control over the vehicle and its contraband because he was the driver and sole occupant. Affirmative links then connected Appellant with the marijuana. The quantity and location of the contraband, conduct during Appellant's interaction with Moncada, and the notebook found in the vehicle all played a logical role in linking Appellant to the contraband. Moncada found approximately 100 pounds of marijuana in a hidden compartment. Appellant became nervous when Moncada explained the reason for the stop, and Moncada noticed that Appellant's hands were shaking and he began to stutter as he talked. Like the letter in *Menchaca*, the spiral notebook found in the car linked Appellant to drug activity. Based on their experience and training, Moncada and Gutierrez both believed the notebook to be a ledger containing information related to narcotics transactions. This evidence is legally sufficient to sustain the conviction.

Turning to a factual sufficiency review, Appellant argues that the State presented too few affirmative links. Moncada could not recall who owned the car, but he knew that it did not belong to Appellant. There was no evidence that Appellant made any incriminating statements or that a large amount of cash was found on him. No drugs were found on Appellant and he did not attempt

to flee. We conclude, however, that a jury could rationally infer that Appellant had knowledge of the marijuana based on three factors: (1) the contraband was concealed in a hidden compartment and valued at $134,000; (2) Appellant was nervous, shaking, and stuttering during his encounter with Moncada; and (3) the information in the spiral notebook was consistent with narcotics transactions. A neutral review of this evidence fails to demonstrate that proof of guilt was so obviously weak as to undermine confidence in the jury's verdict. Nor is the proof of guilt greatly outweighed by contrary evidence. Thus, the conviction is supported by factually sufficient evidence. We overrule both issues for review and affirm the judgment of the trial court.

February 26, 2009

ANN CRAWFORD McCLURE, Justice

Before Chew, C.J., McClure, and Carr, JJ.
Carr, J., not participating

(Do Not Publish)